UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| DAVID E. WILLIAMS-SMITH and KIMBERLY BONNER as next friend of J.F.B. and K.L.B., and ISAAC RAMIREZ, <br><br>    *Plaintiffs*, <br><br> v. <br><br> DESIGNERS EDGE, INC., HOME DEPOT, U.S.A., INC., COLEMAN CABLE, INC., and LORD CORPORATION, <br><br>    *Defendants*. | § § § § § § § § § § § § § § §    CIVIL ACTION G-10-00590 |

## ORDER

Pending before the court are cross motions for summary judgment filed by defendant/cross-plaintiff Coleman Cable, Inc. ("CCI")(Dkt. 304) and defendant/cross-defendant Designer's Edge, Inc., a/k/a TDE, Inc. ("TDE") (Dkt. 308). Having considered the motions, responses, replies, and applicable law, the court is of the opinion that CCI's motion should be GRANTED and TDE's motion should be DENIED.

### I. BACKGROUND

The only remaining claim in this lawsuit is a cross-claim for defense and indemnity asserted by CCI against TDE. *See* Dkt. 304. CCI purchased certain assets from TDE via an asset purchase agreement (the "Contract") on April 1, 2011. Dkt. 304, Ex. B. The Contract had a governing provision selecting Illinois law. Dkt. 304, Ex. B. Specifically, the provision states, "The validity, interpretation and effect of this Agreement shall be governed exclusively by the laws of the State of Illinois, excluding the 'conflict of laws' rules thereof." *Id.* The Contract also had an indemnification by seller provision that reads as follows:

## ARTICLE XII
## Indemnification

12.1 <u>Indemnification by Seller</u>.  Subject to the provisions of this <u>Article XII</u>, Seller covenants and agrees after the Closing to indemnify, defend and hold harmless Purchaser and its Affiliates, and their respective officers, directors, shareholders, employees and agents (collectively, "<u>Purchaser Indemnitees</u>"), from and against any and all Adverse Consequences, arising or resulting from, directly or indirectly, any of the following:

. . .

(c) Any Retained Liabilities;

. . .

(d) Any Liabilities of Seller, whether accrued or contingent, known or unknown, and/or presently existing or arising in the future, which are based upon, or arise out of, the operation of the Business or utilization of the Purchased Assets prior to and including the Closing Date . . . .

*Id.*  "Retained Liabilities" is defined as follows:

2.7 <u>Retained Liabilities</u>.  Purchaser shall not assume or pay any, and Seller shall continue to be responsible for each, Liability of Seller whether or not relating to the Business, not expressly assumed by Purchaser in <u>Section 2.6</u> (collectively, the "<u>Retained Liabilities</u>").  Specifically, without limiting the foregoing, the Retained Liabilities shall include the following:

. . .

(b) Any claim, action, suit or proceeding pending, including environmental claims and claims listed in <u>Section 7.10</u> of the Disclosure Schedule, as of the Closing Date, notwithstanding the disclosure thereof in the Disclosure Schedule, or any subsequent claim, action, suit or proceeding arising out of or relating to (I) such pending matters, (ii) any other event occurring on or prior to the Closing Date, or (iii) resulting from Seller's conduct of the Business;

. . .

(f) Any Liability arising from claim, proceedings or causes of action resulting from . . . personal injuries (including death) caused by services rendered by Seller, notwithstanding the disclosure thereof in the Disclosure Schedule . . . .

*Id.*  This lawsuit, which was filed on December 21, 2010 (more than four months before the Contract was endorsed) was listed in Section 7.10 of the Disclosure Schedule.  *See id.*

2

The underlying lawsuit was a product liability and negligence action relating to a halogen work-lamp that allegedly caused a fire. Dkt. 1. The plaintiffs alleged that the work-lamp was designed, manufactured, or marketed by TDE. *Id.* On November 1, 2011, the plaintiffs moved to join CCI as a defendant, noting that CCI had acquired all of TDE's assets and that CCI, rather than TDE, was the proper party under Washington law. Dkt. 56. The court granted the motion on November 2, 2011, and the plaintiffs filed a second amended complaint adding CCI as a defendant on November 3, 2011. Dkts. 57, 58. CCI filed its answer and a cross-claim against TDE for indemnification on December 9, 2011. Dkt. 65. On April 16, 2012, counsel announced settlement at docket call. On April 30, 2012, CCI moved for summary judgment against TDE, arguing that, under Illinois law, TDE breached its duty to indemnify CCI. Dkt. 304. On May 14, 2012, TDE responded to CCI's motion and moved for summary judgment against CCI, arguing that Texas law applies and that the indemnification provision in the Contract does not meet Texas requirements. Dkt. 308.

## II. Legal Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if

3

a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id*. "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting Fed. R. Civ. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment

simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

### III. ANALYSIS

CCI argues that Illinois law, which is the law chosen in the governing law provision of the Contract, covers this dispute, and that under Illinois law it is entitled to summary judgment in its favor. TDE argues, however, that Texas law should apply because Texas bears the most significant relationship to this matter, which is essentially about attorneys' fees for Texas attorneys, and that, under Texas law, the indemnity clause in unenforceable because it does not meet the fair notice standard because it is not conspicuous. Dkt. 315. The court notes that it has previously ruled that the state of Washington has the most significant relationship to the Contract.[1] *See* Dkt. 244.

In diversity cases, federal courts must apply the conflict-of-law rules of the state in which it sits. *Denman by Denman v. Snapper Div.*, 131 F.3d 546, 548 (1998). Texas courts respect parties' "choice that the law of a specified jurisdiction apply to their agreement," but also note that "the

---

[1] The previous ruling was in the context of determining whether CCI should prevail on a motion for summary judgment on the products liability action because, under either Texas or Illinois law, the plaintiffs could not sustain a cause of action against CCI under the "product line exception." Dkt. 244. The court, applying Texas choice of law rules, determined that Washington had the most significant relationship to the dispute because "(1) Designers Edge is headquartered and incorporated, at the relevant time, in the state of Washington; (b) the assets, the subject of the [Contract], were located in the state of Washington; (c) Designers Edge's shareholders and founder reside in the state of Washington; (d) agents of [CCI] traveled to the state of Washington to inspect products and inventory [; and (e) . . . Designers Edge principals executed the [Contract] in the state of Washington." *Id.* at 6-7.

parties' freedom to choose what jurisdiction's law will apply to their agreement cannot be unlimited." *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990). Specifically, they "cannot require that their contract be governed by the law of a jurisdiction which has no relation whatever to them or their agreement," and "they cannot thwart or offend the public policy of the state the law of which ought otherwise to apply." *Id.* Therefore, under Texas law,

> In a contract *with* an express choice of law, indemnity is governed by the law chosen by the parties unless (1) there is a state with a more significant relationship to the transaction . . . , and (2) applying the chosen law would contravene a fundamental policy of that state, *and* (3) that state has a materially greater interest in the determination of the particular issue.

*Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc.*, 94 S.W.3d 163, 169-70 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Thus, the Texas Supreme Court has clearly indicated that parties do not have an unfettered right to choose a forum that has no relationship whatsoever to the parties. While CCI argues that Illinois law should apply because it was the chosen law in the Contract, CCI has not provided the court with any indication as to what Illinois's relationship to this case is.

TDE argues that applying Illinois law would contravene the fundamental policy of Texas because Illinois strictly construes indemnity contracts, whereas Texas has fair notice requirements when an indemnification provision involves shifting risks of a party for its own negligence. Dkt. 308. The court agrees that if the Texas fair notice standards were applicable to the indemnity clause here and it did not meet these requirements, then applying Illinois law would likely contravene Texas policy. However, under the facts of this case, the court finds that the express negligence doctrine is not applicable. It applies when indemnitees are "seeking indemnity for the consequences of their own negligence, which proximately causes injury jointly and concurrently with the indemnitor's

negligence." *Amoco Oil Co. v. Romaco, Inc.*, 810 S.W.2d 228, 229 (Tex. App.—Houston [14th Dist.] 1989, no writ). "The [Texas] Supreme Court's purpose in adopting the express negligence doctrine was to require drafters of contracts clearly to express any intent to indemnify for the indemnitee's own negligence, rather than subtly conceal such provisions within an agreement between the parties." *Id.* (citing *Atlantic Richfield v. Petroleum Personnel, Inc.*, 768 S.W.2d 724 (Tex. 1989)). Here, CCI is not seeking indemnity for its own negligence. CCI's alleged liability in this case, as noted in the second amended complaint, allegedly arises "because (1) [CCI had] acquired substantially all of Designers Edge, Inc.'s assets; (2) [CCI was] holding itself out to the general public as producing the same product line under the same or similar name; and (3) [CCI was] benefiting [sic] from the goodwill of Designers Edge, Inc." Dkt. 58. Thus, under the second amended complaint, CCI's alleged negligence is wholly derivative of Designers Edge's (a/k/a TDE).[2] Thus, CCI is not seeking indemnification for its own negligence, which proximately caused injury with TDE's negligence, and Texas's fair notice standards are not applicable.

TDE's sole argument with regards to conflict involved Texas's fair notice standards. TDE does not argue that there is any conflict of law with regard to the elements of breach of contract and whether it breached the contract by failing to defend and indemnify CCI. The court finds that, under Texas, Illinois, or Washington law, TDE breached the Contract when it failed to indemnify, defend and hold harmless CCI under the terms of the Contract for this lawsuit. Under Washington law, "indemnity agreements are interpreted like any other contracts," *Scott Galvanizing, Inc. v. Nw.*

---

[2] TDE argues that CCI "cannot argue that it absolutely was not liable without attempting to re-argue its motion for summary judgment," because the court already ruled, applying Washington law, that "several issues remained to be resolved." Dkt. 315 (citing Dkt. 244). Those issues, however, related to whether CCI assumed liability under the "products line" exception permitting *successors*' liability. Dkt. 244. It does not mean there were issues with regard to CCI's *own* negligence.

*EnviroServices, Inc.*, 844 P.2d 428, 432 (Wash. 1993). The elements of a breach of contract, under Washington law, are "(1) a contract that imposed a duty, (2) breach of that duty, and (3) an economic loss as a result of that breach." *Myers v. State*, 218 P.3d 241, 243 (Wash. App. 2009). Under Texas, law, a plaintiff must show "(1) existence of a valid contract, (2) the plaintiff performed or tendered performance, (3) the defendant breached the contract, and (4) the plaintiff suffered damages as a result of the defendant's breach." *Expro Ams., LLC v. Sanguine Gas Exploration, LLC*, 351 S.W.3d 915, 920 (Tex. App.—Houston [14th Dist.] 2011, pet. filed). Similarly, under Illinois law, the elements of a breach of contract claim are "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Henderson-Smith & Assocs., Inc. v. Nahamani Family Serv. Ctr., Inc.*, 752 N.E.2d 33, 43 (Ill. App. 2001). CCI has shown that there is a valid contract, that TDE breached the contract by failing to defend and indemnify it for the underlying lawsuit, which was a retained liability, and that it suffered monetary damages as a result. Thus, CCI has established the elements of a breach of contract under, Washington, Texas, or Illinois law. Accordingly, CCI is entitled to summary judgment on its breach of contract claim. CCI's motion for summary judgment is hereby **GRANTED**. TDE's competing motion for summary judgment is **DENIED**.[3]

### IV. ATTORNEYS' FEES AND EXPENSES

CCI provides evidence of attorneys' fees and expenses, which it claims as damages for TDE's breach of contract. In its motion, CCI requested a specific amount of fees, expenses, and

---

[3] TDE notes that because CCI admits the enforceability of the Contract, it must also admit that the dispute should be transferred to King County, Washington, which is the choice of venue under the Contract. Dkt. 308. CCI argues that TDE waived any right to a transfer by admitting subject matter jurisdiction and venue and waiving its objection to personal jurisdiction by answering without special exception. Dkt. 312. Regardless, there is no actual motion to transfer venue before the court.

expert witness costs through March 31, 2012, and noted that it would supplement its motion with additional fees associated with filing the motion for summary judgment. Dkt. 304. The court has received no supplement. TDE moves so strike the evidence of fees and expenses, arguing that the evidence is premature, as the appropriate time to introduce this evidence is after entry of judgment. Dkt. 308. TDE's motion to strike is DENIED. Since CCI's briefing on damages is incomplete, the court will determine the amount of damages after receipt of post-judgment briefing as outlined below.

## V. Conclusion

CCI's motion for summary judgment (Dkt. 304) is GRANTED. TDE's motion for summary judgment (Dkt. 308) is DENIED. TDE's motion to strike (Dkt. 308) is DENIED. The court will determine damages at a later date. CCI shall submit renewed briefing regarding its damages within twenty days of the date of this order. TDE shall, if desired, respond to CCI's submission within twenty days. No reply briefs will be accepted.

It is so ORDERED.

Signed at Houston, Texas on December 14, 2012.

_____
Gray H. Miller
United States District Judge